## Moyers *et al. versus* Tiley.

The lease of a coal-bank provided that the lessee should put the said coal-bank in good working order, for the rent of the first year, and thereafter pay a certain sum for every bushel of coal taken from the bank; and that if the said coal-bank should stand, by the act of the lessee, when it would yield coal, for the term of one year, it should be taken as an abandonment of the lease, and be treated accordingly: *Held,* that this clause of forfeiture had no reference to the first year of the term.

ERROR to the Common Pleas of *Cambria county.*

This was an ejectment by Michael Moyers and Elizabeth Moyers against William Tiley, for a tract of 200 acres of land in Washington township. The case was formerly in this court, and is reported in 1 *Casey* 397.

In 1852, the plaintiffs, being the owners of the land in controversy, leased the same to the defendant, Tiley, by the following instrument:—

"Agreement made this 29th day of January 1852, by and between Jacob Moyers and Elizabeth Moyers (of Adam Moyers, deceased), of Washington township, Cambria county, of the first part, and William Tiley, Sr., of Huntingdon county, of the second part, witnesseth, that for and in consideration of the covenants and agreements hereinafter contained, the said Moyers, of the first part, doth agree to grant, lease, and demise unto the said Tiley, their coal-bank, and the appurtenances thereunto belonging, together with the privilege of timber for the use of coal-bank, for and during the term and space of ten years, from the first day of March 1852, and to continue until fully complete and ended. In consideration of which, the said William Tiley, Sr., doth bind himself well and truly to put the said coal-bank in good working order, for the rent of the first year; and to pay the second and third year, one-quarter of a cent per bushel, for each and every bushel of coal taken from the said bank; and for the remaining seven years, one-half cent per bushel, for each and every bushel taken; payment to be made quarterly. It is further agreed, that the said Tiley is to have the privilege of a right of way for a more direct railway, provided it does not interfere with any other buildings on the land of the said Moyers, together with the privilege of building one or more houses or shops for the use of said bank, and to occupy them for the term of this lease, free of rent, and to leave them in good order; the buildings to be substantial. *It is mutually agreed, that if the said coal-bank should stand by the act of said Tiley, when it would yield coal, for the term of one year, it is to be taken as an abandonment of the lease, and to be treated accordingly.* It is further agreed, that the said Tiley

[Moyers *et al. v.* Tiley.]

is to leave the bank in good working order; and the main gang-way to be left open, or in such order so as not to interfere with the taking out of coal, on the expiration of this lease.   No other persons are to have the privilege of taking coal from said bank, without the consent of said Tiley first had or obtained in writing."

At the time of the execution of this lease, there were two open drifts, on the land leading to the coal vein, which were in such a state of dilapidation as to require the construction of new ones, or the reparation of the old, at a great expense. Tiley, the lessee, did not repair these drifts, nor did he take any coal from the bank, during the first year of the term; but, in the second year, he purchased an adjoining piece of land, upon which two drifts were opened, one of which communicated with the drifts on the demised premises, and by this avenue he obtained access to the coal on the plaintiffs' tract; and thence continued to mine the coal, as well on his own land, as on the demised premises.

On the trial, the plaintiffs' counsel requested the court to charge the jury:—That if they believed from the evidence, that the coal-bank leased by the defendant, William Tiley, was suffered by him to remain any one year, during the lease, without taking coal out of said coal-bank, there was an abandonment of the lease, and the plaintiffs are entitled to recover.

The court below (TAYLOR, P. J.) refused so to charge the jury; and added:—"We think it very plain that such is not the mean-ing of this part of the lease—we instruct you, explicitly, that, according to the true meaning of the parties to this agreement, and the true construction of it, the lease should not be considered abandoned, unless there should appear to have been no coal mined through any entry, in consequence of the act or fault of Tiley, between the 1st of March 1853 and the 1st of March 1854.   If there was any coal mined on the Moyers land by Tiley, within that year, the plaintiffs cannot recover in this action, and the ver-dict must be for the defendant."

To this the plaintiffs excepted; and a verdict and judgment having been rendered for the defendant, they removed the cause to this court, and here assigned the same for error.

*White & Coffey*, for the plaintiffs in error.

*Miles*, for the defendant in error.

The opinion of the court was delivered by

CHURCH, J.—The question in this cause arises upon the con-struction of the lease.   The plaintiffs claim, that if defendant suffered the coal-bank to remain any one year during the term, without taking coal out of it, his rights under the lease became

[Moyers *et al.* *v.* Tiley.]

forfeited to them. The clause in the instrument upon which this forfeiture is set up, is in the following words:—"*It is mutually agreed, that if the said coal-bank should stand, by the act of said Tiley, when it would yield coal, for the term of one year, it is to be taken as an abandonment of the lease, and to be treated accordingly.*" It is very clear from the language "*when it would yield coal,*" that it was contemplated by the parties, there might be, during the term, a period of at least a year, when the bank would not yield coal. This clause of forfeiture is inserted wholly for the benefit and protection of the plaintiffs. And the stipulation that putting the bank in *good working order* should answer for the rent of the first year, was apparently intended for the advantage of the defendant. If the latter put the bank in good working order and took out no coal, it necessarily saved the coal so much, for mining in subsequent years, when it would yield a rent to plaintiffs; instead of which, having it taken when yielding no rent to them, it might result greatly to their disadvantage. This view is sustained by the provision, that for the next two succeeding years, the rent should only be half the sum per bushel of that required to be paid for the last seven years of the term. It would, therefore, be an unwarranted presumption, to suppose or infer that the parties intended to bind the lessee by contract to perform that which was so obviously, under any view of the evidence, to result most to his advantage, and the probable disadvantage of the lessors, upon the pain of forfeiture to the latter of all his rights with his contemplated improvements and expenditures, under the terms of the lease. There could have been no such incentive required. These are not the circumstances and motives which induce the introduction of clauses of forfeiture in deeds. It seems preposterous, therefore, to construe this one as contended for by plaintiffs. If there has been any breach of covenant by the lessee, in not putting the bank in good *working* order, during the first year, the only remedy is undoubtedly in damages, as indicated by this court when the cause was here before: 1 *Casey* 397. The true and common sense interpretation of this clause of the lease was given in the able charge of the learned judge who tried the cause below. Due consideration given to the commentator's definition of title by forfeiture fully sustains the view we have taken. It is, he says, a sort of punishment annexed by law, or contract, to some act or negligence in the owner whereby he loses all his right and interest, and they go to the party *injured* as a recompense for the wrong he has sustained. There is in this case no injury or wrong to plaintiffs shown, and none can reasonably be implied from the terms of the lease. Forfeitures are odious in law, not to be favoured, and never adjudged, except when required by a plain and clear interpretation of the contract, and also

promptly demanded, without any symptoms of *laches* or acquiescence.    That is surely not the case here.

We perceive no error in the ruling of the Common Pleas on the question, and the judgment must be affirmed.

Judgment affirmed.